BOUND v. SOUTH CAROLINA RY. CO. et al. BARNES et al. v. BOUND et al. WALKER v. SAME. COGHLAN v. SAME. SMITH et al. v. SAME.

(Circuit Court, D. South Carolina. January 19, 1894.)

RAILROAD MORTGAGES—FORECLOSURE—COUNSEL FEES.

Where an individual bondholder brings a foreclosure suit, alleging laches on the part of his trustees, and making them, and all prior lienholders, parties, and the latter, by cross bills, also pray foreclosure of their own liens, so that, as a result of the litigation, the property is decreed to be sold free of all liens, the trustees of the various mortgages must be considered as acting in the interest of their own bondholders alone, and the counsel fees of the various parties will not be charged upon the fund as a whole, but upon that part of the proceeds appropriated to the payment of the mortgages respectively, except that, where part of the bondholders under one mortgage dissent from the action of their trustees in declaring the mortgage due for default in interest, and contest the matter in the foreclosure proceedings, such dissentients must pay their own counsel fees.

In Equity. Bill by Frederick W. Bound against the South Carolina Railway Company and others for a receiver, foreclosure, etc. See 43 Fed. 404; 46 Fed. 315; 47 Fed. 30; 50 Fed. 312, 853; 51 Fed. 58; 55 Fed. 186; 58 Fed. 473. Heard on application for the payment of counsel fees.

McCradys & Bacot, for trustees first mortgage.
Samuel Lord, for trustees first consolidated mortgage.
Wheeler H. Peckham and George W. McCormack, for first mortgage bondholders.

Smythe & Lee, for second mortgage bondholders.
Langdon Cheves, for trustees second mortgage.
J. P. K. Bryan, for complainant F. W. Bound.

SIMONTON, Circuit Judge.  A final order of sale under foreclosure having been entered in these cases, a question is presented with respect to the compensation of the counsel in the cause.  Must this compensation, or any part of it, be borne by the general fund?

What is now known as the South Carolina Railway Company was once called the Charleston, Louisville & Cincinnati Railroad Company.  The name was afterwards changed to that of the South Carolina Railroad Company.  By a decree of foreclosure and sale in this court, a second mortgage of the South Carolina Railroad Company was foreclosed, and, upon the sale, the South Carolina Railway Company was organized, and became possessed of all the property, subject, however, to all liens prior to the second mortgage. The South Carolina Railway Company executed three mortgages,— the first, known as the "First Consolidated Mortgage," executed to Barnes and Sloan, trustees; a second, known as the "Second Consolidated Mortgage," executed to Barnes and Higginson, trustees; and a third mortgage, executed to Stout and Higginson, trustees, to secure certain income bonds.

At the beginning of this litigation there were the following liens on this property, in the following order:

First. Bonds of the Charleston, Louisville & Cincinnati Railroad Company, guarantied by the state of South Carolina, and secured by a statutory lien.  These were all held by Henry Thomas Coghlan, who had reduced his demand to judgment, and had obtained leave to issue execution.  This has been paid during the progress of this suit, and is now satisfied.

Second. Bonds secured by the first mortgage of the South Carolina Railroad Company, executed to H. P. Walker, Henry Gourdin, and James Calder as trustees.  Of these trustees, Calder alone survives.

Third. Bonds secured by the first consolidated mortgage, held by Barnes and Sloan, trustees.

Fourth. Bonds secured by the second consolidated mortgage, held by Barnes and Higginson, trustees.

Fifth. Mortgage securing the income bonds.

This litigation began by a bill filed by F. W. Bound, in behalf of himself and all other second mortgage bondholders, seeking foreclosure of the second mortgage, and sale thereunder.  To this bill the trustees of the second mortgage, Coghlan, the trustees of the first mortgage of the South Carolina Railroad Company, the trustees of the first consolidated mortgage, and the trustees of the income bond mortgage were made parties defendant, and the debtor corporation.  All of the defendants appeared and answered.  Thereafter the trustees of the first mortgage of the South Carolina Railroad company, on leave, filed their cross bill, praying foreclosure and sale under their mortgage.  The trustees of the first consolidated mortgage, having first exercised a power under the deed,

and declared all the bonds past due, on leave, filed their cross bill, praying foreclosure and sale under their mortgage. Certain bond-holders of this class, dissatisfied with the action of the trustees, asked and obtained leave to intervene in their own behalf, filed their cross bill, and, with other relief, prayed a sale subject to the lien of their mortgage. H. T. Coghlan also filed a cross bill; but no further mention need be made of his cross bill, for reasons stated. Soon after Bound's bill was filed, the trustees of the second mort-gage, denying the existence of any of the reasons given by Bound for seeking, in person, to protect his rights and those of other second mortgage bondholders, sought to oust him from the control of the cause. This, however, was not pressed to a decision. The record discloses nothing on this head.

The prayer for foreclosure in the Bound bill, and the rights of second mortgage bondholders under their mortgage, never were denied or contested in the cause. The main question, hotly and stubbornly litigated, was whether the property should be sold free of all liens, or whether the foreclosure should be confined to the second mortgage. The final decree is for a sale free of all liens.

The trustees of the first mortgage of the South Carolina Railroad Company, the trustees of the first consolidated mortgage, the trus-tees of the second consolidated mortgage, the trustees of the in-come bond mortgage, and Mr. Peckham, representing the dissenting bondholders under the first consolidated mortgage, as well as F. W. Bound, claim that they should be reimbursed, for counsel fees ex-pended or incurred, out of the general fund prior to any of the liens thereon,—that is to say, that their costs, as between solicitor and client, be paid with the costs as between party and party, and on the same footing. In re Paschal, 10 Wall. 494.

No question can arise in a case giving greater embarrassment to a judge personally than the question of counsel fees. Perhaps no question is as far as this from distinct utterance and final disposi-tion on the part of the supreme court. There can be no doubt that trustees, and all others technically or actually occupying a repre-sentative character, are entitled to be reimbursed for all charges properly incurred in the discharge of the duties devolving upon them out of the fund over which they have charge, and in which their constituents have an interest. Dodge v. Tulleys, 144 U. S. 457, 12 Sup. Ct. 728. That is not the question here. The question is, must the holders of other liens contribute to reimbursing the trustees and holders of liens other than their own for services in this case? And, as it is perfectly manifest that the proceeds of sale in this case will not satisfy in full all the demands upon them, the practical question is, shall the holders of the junior liens bear the burden of the litigation,—must they pay the fees of the counsel of the prior lienors, who were not employed by or controlled by them? Each of these counsel represented the interest which retained him, and we may admit, for the purposes of this question, that in ad-vancing that interest he may have contributed to the common weal.

The general rule is well stated by the supreme court of South Carolina in Hand v. Railroad Co., 21 S. C. 179:

"No one can legally claim compensation for voluntary services to another, however beneficial they may be, nor for incidental benefits and advantages to one, flowing in on account of services rendered to another by whom he may have been employed. Before legal charge can be sustained, there must be a contract of employment, either expressly made, or superinduced by the law upon the facts."

As an illustration of the contract which the law implies, or, as expressed in that opinion, a contract "superinduced by the law upon the facts," is that under which trustees are reimbursed for expenses paid or incurred in protecting, preserving, or securing a common trust fund. They represent all their own cestuis que trustent. Trustees v. Greenough, 105 U. S. 536; Cowdrey v. Railroad Co., 93 U. S. 354. Where many parties have a common interest, and one of them undertakes the expense and burden of the litigation, in whose successful termination all must share, he is protected in the expenses incurred in his creditors' bill. All those who benefit by his service, and who stood by and saw him render it, must contribute. Railroad Co. v. Pettus, 113 U. S. 125, 5 Sup. Ct. 387; Hobbs v. McLean, 117 U. S. 582, 6 Sup. Ct. 870. It is put upon a broad equity in Trustees v. Greenough, supra. It would be inequitable for one alone to bear the burden, and for the others to escape, although they partake of the fruits. But in this case, also, the actor occupies a representative character, and his work is successful because this is recognized.

Did these claimants, or any of them, undertake litigation for the common good, and achieve results in which all share the advantage? In the case at bar the whole property was well known and visible, fully described by deeds on record, subject to liens well known, varying greatly in rank, undisputed. The holders of the second mortgage held their lien with full notice of prior liens. They filed their bill, and began their litigation, with the sole prayer and purpose of obtaining an order for the foreclosure and sale of the interest they held. This was all they were entitled to, and, were their prayer granted, they would be out of court. They were not bound to make the prior incumbrancers parties. Jerome v. McCarter, 94 U. S. 735, 736. They did so, however, in order, probably, to fix the actual amount of the prior liens,—an excellent practice. Having thus brought them in for their own purpose, the fund must, of course, bear the taxed costs. But they were not brought in for the purpose of selling the whole fee. This was not asked, and, had it been, in the prayer, no order to that effect could have been passed without the concurrence of prior lienholders. Their road to a final decree on their bill was clear and open. When, however, the prior lienholders came in, they forthwith sought affirmative relief for themselves, and filed their cross bills to obtain foreclosure and sale under their liens. This may have been—without doubt it was— for the advantage of those lienholders who asked it. Incidentally, it may have been for the benefit of the junior liens. But this incidental benefit was not the provoking motive. These prior lien-

holders had no privity or common interest with the junior liens. In no sense can they be said to represent the junior liens. No contract can be superinduced by the law upon the facts existing here. This will appear more clearly when we consider that the most stubborn litigation was between the first consolidated mortgage trustees and the dissatisfied bondholders concerning the action of the former in declaring the bonds past due. In this litigation the second mortgage bondholders had no interest whatever. It would seem, therefore, that the claim of these various trustees and of the dissatisfied bondholders is not sustained by an equity. As has been said, the proceeds of the sale about to take place cannot be expected to pay the liens on the property, swelled, as they are, by large arrears of interest. Were the claims of these trustees and bondholders sustained, the sums they demand will increase the prior liens on the property, and the whole burden will fall on the junior liens; almost with absolute certainty on that class which began this litigation, and prevented the waste of the common fund, —a paradox in equity.

The trustees of the second mortgage claim that their action was for the common benefit; that each lienholder, recognizing the propriety of their proceedings, came in and used them as the means of advancing and protecting their special interest. Had the proceedings been instituted by them, or had they, in the progress of the suit, been placed in control of them, the position now taken would have great strength. But the ground upon which F. W. Bound based his individual action in bringing the bill in his own behalf, and that of other bondholders in like plight with him, was the laches of these trustees. This was denied by the trustees. But the record discloses no successful effort on the part of the trustees, after they had come into the case, to take the control or leadership therein. On the contrary, the cause has all along been promoted by Bound and his solicitors, and this court has recognized this in a substantial way. Bound v. Railway Co., 43 Fed. 404.

It is ordered: That the trustees of the first mortgage be reimbursed and protected in such counsel fees as they may have paid, or have become responsible for, out of so much of the proceeds of sale as may be appropriated to the payment of the bonds secured by this mortgage, special compensation being provided out of the sterling bonds for services in fixing the rate at which they are to be paid in American money.

That the trustees of the first consolidated mortgage be reimbursed and protected, in such counsel fees as they may have paid or have incurred, out of the proceeds of sale appropriated to pay all the bonds secured by the mortgage not held by the dissenting bondholders, whose names are on the record in the petition expressing their dissent.

That these dissenting bondholders satisfy their own attorneys and solicitors.

And the trustees of the second mortgage will in like manner be reimbursed, for counsel fees paid or incurred by them, out of the

proceeds of sale applicable to their bonds secured by this mortgage.

All the taxed costs of this case, as between party and party, to be paid out of the fund.