[No. 23501.   *En Banc.*   April 8, 1932.]

*In the Matter of the Estate of* O. B. WILLIAMS,
*Deceased.*

WILLIAM W. WOODCOCK *et al., Appellants,* v. E. S.
McCORD *et al., Executors and Trustees,*
*Respondents.*[1]

[1]Reported in 10 P. (2d) 219.

*Pemberton & Robinson* and *Landon & Landon,* for appellant Hannah E. Williams.

*Bogle, Bogle & Gates* and *Ray Dumett,* for appellants W. E. Walsh *et al.*

*Edgar C. Snyder,* for appellants Wm. W. Woodcock *et al.*

*J. Will Jones* and *Tucker & Tucker,* for appellants Winifred I. Williams *et al.*

*Cosgrove & Terhune,* for respondents E. S. McCord *et al.*

*Smith, Matthews & Dunn,* for respondent Joseph Lloyd Williams.

HERMAN, J.—This matter is presented to the court by separate appeals of Hannah E. Williams, widow of O. B. Williams, deceased, and three different groups of claimants under his will. The hearing upon the petition for distribution was consolidated with the cause of William W. Woodcock *et al.* v. E. S. McCord and Howard Cosgrove, Executors, *et al.,* a proceeding previously instituted by a group of employees of decedent against the executors and trustees under the will of O. B. Williams. Since the filing of the last

mentioned suit, Mr. McCord has died, and the surviving trustee and executor, Mr. Cosgrove, is appearing as one of the respondents. The other respondent, Joseph Lloyd Williams, who is the adopted son of decedent and his first wife, appears by separate counsel.

When O. B. Williams died in 1924, he left a non-intervention will, providing in a general way for the disposal of a substantial fortune, and suggesting a sale of his mill business to his employees. With reference to this non-intervention will, there has been much litigation, various aspects of which have been passed upon by this court and are reported as follows: *In re Williams' Estate,* 145 Wash. 19, 258 Pac. 851; *In re Williams' Estate,* 147 Wash. 381, 266 Pac. 137; *In re Williams' Estate,* 150 Wash. 695, 271 Pac. 1006; *Horton v. McCord,* 158 Wash. 563, 291 Pac. 717; *Woodcock v. McCord,* 160 Wash. 607, 295 Pac. 734.

The final decree and judgment was signed September 2, 1931, as a final decree and judgment in the consolidated causes of *In re Williams' Estate* and *Woodcock v. McCord.* From that final decree and judgment, there are four distinct appeals.

One of the three groups of claimants appealing consists of the brothers and sisters of decedent, who were bequeathed five thousand dollars each, and five brother and sisters (together with the assignee of one of the brothers) of the testator's first wife, who were bequeathed four thousand dollars each. These appellants will be hereafter referred to as the Winifred I. Williams group.

The decree of distribution and judgment sets forth the names of twenty-three employees who are thereby entitled to form and take stock in the corporation to be organized for the purpose of purchasing the mill business under the provisions of the will. As before

stated, one of the consolidated causes being considered in this appeal is the case of *Woodcock v. McCord,* and is a suit brought by three employees on their own behalf and on behalf of all others similarly situated to compel the sale of the mill business to a corporation to be formed by decedent's employees. A number of the employees are now represented by Mr. Snyder in that suit, and these appellants will be referred to as the Woodcock group. Associated with this group in the appeal, and designated as part thereof, are two widows of deceased employees, who claim the right to stock in the corporation. They, like the employees of this group, have for their counsel Mr. Snyder.

Fourteen of the employees, preferring to have their interest represented by attorneys Bogle, Bogle & Gates, have appealed in these consolidated causes, and will hereafter be referred to as the Walsh group.

The Walsh and Woodcock groups maintain the trial court erred in not holding that they were entitled to purchase for $75,000, not only the business, the good will, the material and approximately $16,000 cash in the operating fund of the O. B. Williams Company, but also the real estate on which the buildings stand, the buildings and profits of approximately $150,000 from the business earned during the time it was conducted by the trustees.

Appellant Hannah E. Williams contends that the attempt to create a trust by subdivision (a) of the third paragraph of decedent's will is invalid, because it does not definitely provide a beneficiary capable of coming into court and claiming the benefit of the bequest. This question has not heretofore been disposed of by this court. The Walsh and Woodcock groups both claim that, by virtue of that paragraph, they are entitled to purchase, for the sum of $75,000, the mill, the mill business, the buildings, the real estate, the

cash on hand and the profits earned by the executors since the decedent's death.

The pertinent parts of the paragraph in question are as follows:

"I give, devise and bequeath unto E. S. McCord and Howard Cosgrove, both of Seattle, Washington, all the rest, residue and remainder of my property, real, personal and mixed of whatsoever nature and wheresoever situate, for the following purposes and uses and upon the following trusts, to-wit:

"(a) *I suggest that my said Trustees, as soon after my death as convenient, sell and dispose of my stock of merchandise, mill and mill plant, to a corporation to be organized by my employees and that such corporation pay for such business, including the good will, the sum of Seventy-five Thousand Dollars ($75,000)* and that it be sold to such corporation on liberal terms as to time, but that at least Ten Thousand Dollars ($10,000) should be made payable within one year from the date of the sale, and at least Seventy-five Hundred Dollars ($7,500) be paid each year thereafter until the full amount of the purchase price shall have been paid. Deferred payments should bear interest at the rate of six per cent (6%) per annum, and no dividends to be declared by such corporation until the full sum of Seventy-five Thousand Dollars ($75,000) has been paid. Insurance in the sum of at least Twenty Thousand Dollars ($20,000) should be carried on the mill and the stock. A rental of not less than Four Hundred Dollars ($400) per month, together with all taxes and assessments on the property at No. 1943 First Avenue South should be paid by the corporation, and a rental of One Hundred and Twenty-five Dollars ($125) per month, together with all taxes and assessments upon the mill site at Sixth Avenue South and Henrietta Street, Seattle, Washington; and *I suggest that all employees who have been in my employment for five years and longer should hold stock in such corporation, should they so desire, and that heads of departments should have larger holdings of stock in such corporation, the amounts of stock to be held by the various stockholders to be determined by my Trus-*

*tees.* And such corporation should not be permitted to go into debt for any sum larger than the indebtedness of the O. B. Williams Company at the time of my death. *All the provisions of this sub-division of my will in regard to the formation of such corporation and the purchase of said business, merchandise and other property, and in fact, all of the provisions of this sub-division, are not mandatory upon my Trustees, but are merely a suggestion as a basis for working out a plan by which said business can be handled advantageously.*

"(b) To hold, manage, control, sell and convey any or all of my property, for such prices, upon such terms and to such person or persons as to my said Trustees may seem expedient, the purchaser or purchasers not to be required to see to the application of the purchase money."

In the early decision, *Morice v. Bishop of Durham,* 9 Ves. Jr. 399, 32 Eng. Reprint 656, 10 Ves. Jr. 522, 32 Eng. Reprint 947, 5 Eng. Rul. Cases 548, the court construed a will by which a large estate was bequeathed to the Bishop of Durham, in trust, to dispose of the same to such objects of benevolence and liberality as he should most approve of. In its opinion (9 Ves. Jr. 399), the court said:

"There can be no trust, over the exercise of which this Court will not assume a control; for an uncontrollable power of disposition would be ownership, and not trust. If there be a clear trust, but for uncertain objects, the property, that is the subject of the trust, is undisposed of, and the benefit of such trust must result to those, to whom the law gives the ownership in default of disposition by the former owner. But this doctrine does not hold good with regard to trusts for charity. Every other trust must have a definite object. There must be somebody, in whose favour the Court can decree performance. . . .

"But here there is no specific purpose pointed out, to which the residue is to be applied; the words 'charity' and 'charitable' do not occur; the words used are

not synonymous; the trusts may be completely executed without bestowing any part of this residue upon purposes strictly charitable. The residue therefore cannot be said to be given to charitable purposes; and, as the trust is too indefinite to be disposed of to any other purpose, it follows, that the residue remains undisposed of; and must be distributed among the next of kin of the testatrix.''

In *Tilden v. Green*, 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. 487, the court of appeals of New York, construing the will of Samuel J. Tilden, said:

''The law is settled in this state that a certain designated beneficiary is essential to the creation of a valid trust.

''The remark of Judge Wright in *Levy v. Levy* (33 N. Y. 107), that 'if there is a single postulate of the common law established by an unbroken line of decisions it is that a trust without a certain beneficiary who can claim its enforcement is void' has been repeated and reiterated by recent decisions of this court. *(Prichard v. Thompson*, 95 N. Y. 76; *Holland v. Alcock*, 108 N. Y. 312 [16 N. E. Rep. 305]; *Read v. Williams*, 125 N. Y. 560 [26 N. E. Rep. 730]), and the objection is not obviated by the existence of a power in the trustees to select a beneficiary unless the class of persons in whose favor the power may be exercised has been designated by the testator with such certainty that the court can ascertain who were the objects of the power. . . .

''Every expression used in the will indicates the bestowal of complete discretionary power to convey or not to convey, and the creation and bestowal of such a power in the executors is wholly opposed to and fatal to the existence of an executory devise. . . .

''Here we have the unlimited authority delegated to the executors to withhold the entire property from the corporation if they choose so to do. There the corporation once created was vested immediately by force of the will with the title to the property. Here, although the corporation may be created in a form and

manner satisfactory to the trustees, it takes nothing unless the executors, considering every cause and reason, deem it expedient to convey to it some or all of the residuary estate. . . .

"Hence the existence of a valid trust is essential to one claiming as trustee to withhold the property from the heir or next of kin. What a trustee or donee of a power may do becomes, therefore, immaterial. What he does must be done under a valid power, or the act is unlawful. If the power exercised is unauthorized, the act is of no force or validity. In such case there is no trust or power. . . .

"As the selection of the objects of the trust was delegated absolutely to the trustees, there is no person or corporation who could demand any part of the estate or maintain an action to compel the trustees to execute the power in their favor. This is the fatal defect in the will. The will of the trustees is made controlling, and not the will of the testator. . . .

"By an enforceable trust is meant one in which some person or class of persons have a right to all or a part of a designated fund, and can demand its conveyance to them, and in case such demand is refused may sue the trustee in a court of equity and compel compliance with the demand.

"In this case the testator devolved upon his executors the duty of selecting the beneficiary and there is no person who has the right to enforce that duty or demand any part of the estate in case the executors refuse or neglect to act.

"The power attempted to be vested in the trustees cannot be controlled or enforced, and whether the provisions of the will relating to the residuary estate be regarded as creating a trust or power in trust, they are in either case void."

The supreme court of New Hampshire, in *Clark v. Campbell*, 82 N. H. 281, 133 Atl. 166, 45 A. L. R. 1433, construing the will of Charles H. Cummings, deceased, said:

"By the common law there cannot be a valid bequest to an indefinite person. There must be a beneficiary or

a class of beneficiaries indicated in the will capable of coming into court and claiming the benefit of the bequest. *Adye v. Smith,* 44 Conn. 60 [26 Am. Rep. 424, 425]. . . . The basis assigned for this distinction is the difference in the enforcibility of the two classes of trusts. In the former there being no definite *cestui que trust* to assert his right, there is no one who can compel performance, with the consequent unjust enrichment of the trustee; while in the case of the latter, performance is considered to be sufficiently secured by the authority of the attorney-general to invoke the power of the courts. The soundness of this distinction and the grounds upon which it rests, as applied to cases where the trustee is willing to act, has been questioned by distinguished authorities (5 Harv. L. Rev. 390, 394, 395; 65 Univ. Pa. L. Rev. 538, 540; 37 Harv. L. Rev. 687-8) and has been supported by other authorities of equal note (15 Harv. L. Rev. 510, 513-515, 530). It is, however, conceded by the former that, since the doctrine was first stated in *Morice v. Bishop of Durham, supra,* more than a century ago, it has remained unchallenged, and has been followed by the courts in a practically unbroken line of decisions. 5 Harv. L. Rev. 392, 397; 65 Univ. Pa. L. Rev. 539; 37 Harv. L. Rev. 688; 26 R. C. L. 1189. Although it be conceded that the doctrine is not a legal necessity (15 Harv. L. Rev. 515) the fact that it has never been impeached affords strong evidence that in its practical application it has been generally found just and reasonable. This is a sufficient ground for continued adherence to the rule. . . .

" 'A gift to trustees to dispose of the same as they think fit is too uncertain to be carried out by the court.' Theobald on Wills, 7th ed., 495; *Fowler v. Garlike* (1830), 1 R. & M. 232, 235; *Ellis v. Selby* (1836), 1 M. & Cr. 286, 298; *Buckle v. Briston* (1864), 10 Jur. N. S. 1095; *Yeap Cheap Neo v. Ong Ching Neo* (1875), L. R. 6 P. C. 381, 392; *Fenton v. Nevin* (1893), 31 L. R. Ir. 478; *Olliffe v. Wells* (1881), 130 Mass. 221, 223; *Davison v. Wyman* (1913), [100 N. E. 1105], 214 Mass. 192; *Blunt v. Taylor* (1918), 230 Mass. 303 [119 N. E. 954]."

In *Wilce v. Van Anden,* 248 Ill. 358, 94 N. E. 42, 140 Am. St. 212, the supreme court of Illinois held void for uncertainty a provision in a will that, after the death of the testator's widow and daughter, to whom annuities were given for life, the trustees "may give such part or portions" of the remaining estate

". . . as they may think best and proper to any one or more of my brothers or sisters that may stand in need of the same, in the judgment of my said trustees, and the remainder thereof shall be devoted by said trustees, in their discretion, to the advancement of the cause of temperance or in aid of one or more manual training schools in said city of Chicago."

In *Nichols v. Allen,* 130 Mass. 211, 39 Am. Rep. 445, the court said:

"Two general rules are well settled: 1st. When a gift or bequest is made in terms clearly manifesting an intention that it shall be taken in trust, and the trust is not sufficiently defined to be carried into effect, the donee or legatee takes the legal title only, and a trust results by implication of law to the donor and his representatives, or to the testator's residuary legatees or next of kin. *Briggs v. Penny,* 3 DeG. & Sm. 525, and 3 Macn. & Gord. 546. *Thayer v. Wellington,* 9 Allen 283. *Sheedy v. Roach,* 124 Mass. 472. 2nd. A trust which by its terms may be applied to objects which are not charitable in the legal sense, and to persons not defined, by name or by class, is too indefinite to be carried out. *Morice v. Bishop of Durham,* 9 Ves. 399, and 10 Ves. 521. *James v. Allen,* 3 Meriv. 17. *Chamberlain v. Stearns,* 111 Mass. 267."

Chief Justice Gray of the supreme court of Massachusetts, in the case of *Hess v. Singler,* 114 Mass. 56, said:

". . . in order to create a trust, it must appear that the words were intended by the testator to be imperative; and when property is given absolutely and without restriction, a trust is not to be lightly im-

posed, upon mere words of recommendation and confidence.''

In *Morice v. Bishop of Durham,* 10 Ves. Jr. 522, 32 Eng. Reprint 947, the Lord Chancellor said:

"If neither the objects nor the subject are certain, then the recommendation or request does not create a trust; for of necessity the alleged trustee is to execute the trust; and, the property being so uncertain and indefinite, it may be conceived, the testator meant to leave it entirely to the will and pleasure of the legatee, whether he would take upon himself that which is technically called a trust.''

In the case at bar, there was no imperative duty upon the trustees to sell the stock of merchandise, mill and mill plant to a corporation to be organized by decedent's employees. Subdivision (a) of the third paragraph of the will first contains the suggestion that the trustees "shall sell . . . to a corporation to be organized by *my employees.''* The same subdivision, after setting forth terms and conditions upon which the sale shall be made to such corporation, contains the following suggestion:

"I suggest that all employees who have been in my employment *for five years* and longer should hold stock in such corporation, should they so desire, and that the heads of departments should have larger holdings of stock in such corporation, the amounts of stock to be held by the various stockholders to be determined by my trustees.''

From the words attempting to create the trust, there is no way to ascertain whether the contemplated corporation shall be organized by people who were decedent's employees at the time of his death, or by persons who had been in his employ five years or longer. The will did not, with certainty, designate a beneficiary. It indicates a bestowal upon the trustees of a

complete discretionary power to convey or not to convey.

The class of persons referred to as employees of decedent is indefinite. There is the suggestion that the corporation should be formed by decedent's employees; and there is another suggestion that all employees who had been in decedent's *employ five years* should hold stock in the corporation, with the right given decedent's trustees to determine the amounts of stock to be held by the various stockholders. The paragraph in question is an attempt to substitute the will of the trustees for the will of the testator. This was, in effect, an attempt to create a trust, for other than charitable purposes, to be subject to such disposition by the trustees as they deem fit.

The part of the will in question attempted to create a trust for persons not definitely defined by name or class, and is too indefinite to be carried out. We hold that subdivision (a) of the third paragraph of the will does not create a trust requiring the trustees to sell the mill, merchandise and mill plant to a corporation composed of employees on any more favorable terms than to any other purchaser, and that portion of the will is invalid, in so far as it attempts to create such a trust. The title to the property therein referred to will be in the surviving trustee for the use and benefit of the residuary legatees.

The third paragraph of the will makes E. S. McCord and Howard Cosgrove trustees of all the residue of testator's property ''for the following uses and purposes and upon the following trusts, to wit:

''(a) [Referring to the suggestion about the sale to the employees heretofore discussed.]

''(b) To hold, manage, control, sell and convey any or all of my property, for such prices, upon such terms and to such person or persons as to my said trustees

may seem expedient, the purchaser or purchasers not to be required to see to the application of the purchase money.''

Under the provisions of subsection (b), above quoted, the trustees have power "to hold, manage, control, sell and convey" any or all of testator's property, for such price, upon such terms, and to such persons or person, as to the trustees may seem expedient. The sale to the corporation composed of persons who had been in the employ of O. B. Williams Company for five years prior to the death of the testator is within the power of the trustees.

In its decree approving the final account, the trial court made the following recital:

"And it further appearing to the court that the executors and trustees have elected to sell the stock of merchandise, mill and mill plant and business . . ."

On September 30, 1931, Howard Cosgrove, surviving executor of the estate of O. B. Williams, prepared and submitted to the court a suggested final form of conditional bill of sale, pursuant to an order directing him so to do in the decree, signed September 28, 1931, modifying the final decree. The terms which the surviving trustee deems expedient are embraced in the suggested final form of bill of sale; they are based upon his judgment of what is proper under the circumstances, and there is no evidence of caprice, whim or arbitrary action. The group of employees forming the corporation are at liberty to accept or reject this offer, and the trustee may withdraw the offer if it be not accepted within a reasonable time. He may sell the mill, mill business and merchandise to any other purchaser who makes an offer he considers more advantageous, if his present offer be not accepted within a reasonable time.

The assignments of error of the Walsh group are predicated upon the failure of the trial court to admit parol testimony as to what the testator intended the O. B. Williams business to include when sold to the employees under the provisions of the will; upon the failure of the trial court to compel sale to the employees of the real estate, buildings and net profits of the O. B. Williams Company; and upon claim of error by the trial court in failing to sustain appellants' objection to the final form of contract proposed by the trustee, and in approving that form of contract.

The Woodcock group of appellants also makes substantially the same assignments of error, as well as others hereinafter discussed.

In view of our holdings that subdivision (a) of the third paragraph of decedent's will is invalid, in so far as it attempted to create a trust for the benefit of employees of O. B. Williams, and that the surviving trustee has the right to dispose of the property on such terms as to him seem expedient, it is unnecessary to pass upon the foregoing assignments of error raised by the appellants of the Walsh and Woodcock groups.

In addition to the foregoing, the Woodcock group urges as error, first, failure by the trial court to consider an offer of testimony by Joseph Lloyd Williams, adopted son of the testator and his first wife, to show that the surviving widow had sworn falsely that she had not been employed in the home of testator prior to his first wife's death, and that she had not lived in the house of decedent prior to her marriage to him. A consideration of the testimony and issues shows the offer of proof was made in an attempt to impeach a witness on a collateral matter, and the trial court properly rejected the same.

The Woodcock group also urge as error the refusal of the trial court to include in the eligible class of em-

ployees the widows of A. A. Martin and J. W. Van Ness, former employees coming within the five-year class, who died after the death of the testator and before the trial of these consolidated causes. In view of our holding that subdivision (b) of the third paragraph of the will gives to the surviving trustee the right to sell and convey the mill business to such persons as to the trustee may seem expedient; we find no merit in this assignment of error.

Finally, the Woodcock group maintains that the trial court erred in refusing an allowance to the attorney for the appellants Woodcock *et al.*, as compensation for his services in behalf of all the eligible employees. While the attorney for this group of appellants has rendered much valuable service to his clients, he must seek his reward from them. The case of *Drain v. Wilson*, 117 Wash. 34, 200 Pac. 581, cites with approval the rule with reference to the allowance of compensation in suits brought in a representative capacity, as set forth in the case of *Farmers' Loan & Trust Co. v. Green*, 79 Fed. 222, wherein the court said:

"There is no question as to the power of a court of equity, in cases of administration of funds under its control, to make such allowance to those who have instituted proceedings for the benefit of the fund as justice and equity may require. It is a well-recognized rule of equity that when a trust fund is brought into court for administration and distribution, it must bear the expense incurred in proper proceedings taken for the purpose. This expense necessarily includes the fees of the counsel who brings the suit, and who is considered as representing all persons having a common interest in the fund brought into court by it, and who avail themselves of its benefits, and of counsel who may be employed by authority of the court to perform services beneficial to the trust fund. *Trustees v. Greenough*, 105 U. S. 527; *Jacksonville, T. & K. W. Ry. Co. v. American Const. Co.*, 6 C. C. A. 249, 57 Fed.

66; *Bound v. Railway Co.*, 59 Fed. 509; *Insurance Co. v. Dellatorre*, 17 C. C. A. 310, 70 Fed. 643."

In the case at bar, the testator, in attempting to express his intention, used such language that this court was compelled to find that subdivision (a) of the third paragraph of his will was so indefinite as to render invalid the trust it attempted to create. Notwithstanding the able service rendered by the attorney for the Woodcock group, he has not succeeded in reducing to the possession of the employees any fund, and has been unable to procure for them anything of value out of which this court can allow him a fee. The mere offer of the trustee to sell to a corporation to be formed by a group of employees, most of whom are represented by other counsel, under the circumstances, cannot be considered as a thing of value upon which this court can allow a fee to the attorney. The trial court did not err in refusing an allowance to the attorney for the Woodcock group.

[5] The Winifred I. Williams group of appellants predicate both their assignments of error on the failure of the trial court to allow to each of them interest on the bequests of money which the testator directed the trustees to pay the members of that group.

Rem. Comp. Stat., § 1396, states:

"No interest shall be allowed or calculated on any devise contained in any will unless such will expressly provide for such interest."

Counsel for the Winifred I. Williams group of appellants argue that the term "devise" in the above section is used in its narrow sense, and applies only to real estate. We cannot so hold. The use of the word "devise" in other parts of the act indicates that the legislature in this connection used the word in its larger sense, as applying to personal property dis-

posed of by will as well as realty. Rem. Comp. Stat., § 1394, provides:

"Every person who shall have attained the age of majority, of sound mind, may by last will devise all his or her estate, real and personal."

It appears that the legislature intended beneficiaries of personal property under a will to be allowed no interest unless the will expressly provided for interest. The trial court correctly refused to allow interest to members of the Winifred I. Williams group of appellants.

■ Appellant Hannah E. Williams, testator's widow, sets forth as an assignment of error the refusal of the trial court to charge against that portion of the residue of the estate passing to Joseph Lloyd Williams his proportionate share of the costs and attorneys' fees which were incurred in the litigation in *In re Williams' Estate,* 147 Wash. 381, 266 Pac. 137. About three years after the testator's death, a petition was filed on behalf of the trustees, asking for a partial payment on account of their services for the first three years of their administration of the estate. Hannah E. Williams, with the knowledge of Joseph Lloyd Williams, the other residuary legatee, contested the award made by the superior court and appealed to this court, contending that the trustees were entitled only to the compensation provided in the will. This court upheld appellant's contention (147 Wash. 381), thereby accomplishing a substantial saving for the residuary legatees, two in number.

This court, in *Drain v. Wilson, supra,* has held that, in cases where parties, for their own benefit and for the benefit of others having a common interest, employ attorneys in good faith to protect trust funds, equity will impose counsel fees upon such trust funds. The

trial court in this case erred in making no charge against the residue of the estate for the services rendered by appellant Hannah E. Williams' counsel.

Attorneys for appellant Hannah E. Williams are employed on a contingent fee basis, and their compensation will depend upon the amount in excess of $25,000 which is received by their client. However, this does not obligate them to render legal services by which the other residuary legatee will profit without expense. Considering the substantial saving to the residuary legatees accomplished by the appeal of Hannah E. Williams, $7,500, the amount asked by her counsel, was a reasonable attorneys' fee in that matter. However, counsel's contingent fee contract with Hannah E. Williams covers all work done by them for her in connection with the matter of the estate of O. B. Williams.

The remaining residuary legatee, Joseph Lloyd Williams, who, unlike Hannah E. Williams, has no contract with the counsel conducting the litigation resulting in the conservation of the trust fund, but who profits equally with her, must bear his share of the expense of effecting the saving. There will be charged against the residue of the estate passing to him one-half of $7,500; and the surviving executor and trustee is hereby directed to pay to Hannah E. Williams' counsel, $3,750 from the residue of the estate passing to Joseph Lloyd Williams.

An examination of the assignments of error, other than those heretofore discussed, discloses them to be without merit.

Remanded, with directions to modify the final decree and judgment in the consolidated causes in conformance with this opinion.

MAIN, PARKER, MILLARD, BEELER, and MITCHELL, JJ., concur.

BEALS, J. (dissenting)—Assuming that the decision rendered by this court sitting *En Banc* in the case of *Woodcock v. McCord,* 160 Wash. 607, 295 Pac. 734, leaves undecided the question of whether or not subdivision (a) of the third paragraph of Mr. Williams' will is effective for the purpose of creating a trust, which matter I consider very doubtful, I am of the opinion that this portion of the decedent's will does create a valid trust which the court should enforce. I am also of the opinion that the plan submitted by the surviving trustee, and approved by the court, is in some particulars unreasonable and not in accord with the intent of the testator. I incline to the view that the decree appealed from should be modified in certain particulars, which, in view of the majority opinion, need not be discussed.

I concur with the majority in the disposition made of the questions urged by the Winifred I. Williams group of appellants, and in directing that the portion of the estate passing to Joseph Lloyd Williams be charged with a share of the fee to be paid to counsel for appellant Hannah E. Williams, but consider the amount allowed excessive.

TOLMAN, C. J., concurs with BEALS, J.

HOLCOMB, J. (dissenting)—No such doubt exists in my mind as is suggested by Judge Beals in his dissent herein, concurred in by the Chief Justice, concerning the intended and undoubted effect of the majority decision in the *Woodcock* case, *supra*. If the majority decision there did not determine that paragraph three of the will was valid, although in some respects ambiguous, it certainly contained that assurance in favor of these same employees, who relied upon it and acted accordingly. It was there decided that their complaint stated a cause of action to the legal effect that the pro-

visions of the will created a precatory trust, but designated certain provisions which were ambiguous, and remanded the case to receive

". . . extrinsic evidence to ascertain the intent of the testator as to the conditions under which the employees are to acquire the mill plant, and the extent of that gift."

It was also there directed that,

". . . to the end that one trial may result in the distribution of the estate, the trial court is also directed to require the trustees to submit, by cross-complaint or by answer, their construction of the will and their plan for carrying out the intention of the testator as interpreted by them . . . ;"

all of which was done by the trial court, the trustees and the employees, in strict compliance with that direction,—now nothing but an idle gesture.

Judges Main, Fullerton, and I concurred with the very cogent dissent of Judge Parker against the decision by a bare majority of the court that the same paragraph was valid which is now held invalid. That decision should now constitute the law of this case, regardless of ancient precedents supporting the very able opinion of Judge Herman, by which the parties and this court (including the minority) should be concluded, unless expressly overruled. That effect is accomplished *sub silentio*.

I concur in the view expressed by Judge Beals that the plan submitted by the surviving trustee and approved by the court is in some particulars unreasonable and not in accord with the intent of the testator, and also as to the determination of the Winifred I. Williams group of appellants, and that amount of attorney's fee to be paid the attorney for appellant Hannah E. Williams is excessive.

For the reasons herein stated, I am compelled to dissent from the majority decision.