## FRANCIS *v.* WELLS.

VENDOR'S LIEN *in favor of assignee of purchase-money.* Where, upon sale of land, the vendee agrees to pay a portion of the purchase-money to a third party, as against the vendee and those claiming under him, with notice, such third party may have a lien upon the land to secure the amount so agreed to be paid.

*Where the vendee assigns his contract.* And if the vendee assign the contract to another, the assignee will take the land subject to the same lien, and be equally bound to perform the stipulations of the contract.

*Of the nature of the lien.* But if the vendee altogether fail to perform the contract, he acquires no interest in the premises, and there is nothing to which a vendor's lien can attach in favor of such third party.

Where time is of the essence of the contract, upon failure of the vendee to perform, the vendor may lawfully sell to another.

And the last purchaser will not be bound by the stipulations of the first contract, unless he agreed to so bind himself.

W. sold to M. certain lands, and gave a bond for a deed in the usual form, making time of the essence of the contract. Complainant negotiated the sale for W., and was entitled to part of the purchase-money as commission, which M. agreed to pay to him. M. failing to make payments, W. sold the same land to F. *Held,* upon bill to enforce a vendor's lien:

1. That M. acquired no interest in the premises, and no lien could exist as against him.

2. That upon M.'s failure to perform his contract, W. might lawfully sell to F., and the latter was not bound by M.'s contract, unless he so agreed.

3. That if the last proposition is wrong, the premises were held by F. subject to M.'s contract, and complainant must look to the fund to be paid by M.

PLEADING AND PROOF *must correspond.* Complainant must recover according to the allegations of his bill, if at all, and if the proof establishes a different case from that which he has alleged, although a good one, he cannot have relief.

*Appeal from District Court, Clear Creek County.*

THE bill was exhibited against Casper S. Francis, George McFarland, George Way, Erskine McClellan and Chas. R. Fish. If the statement of the case in the opinion of the court is regarded as insufficient, the allegations of the bill will be found fully set forth in the dissenting opinion.

The bill was filed September 8, 1873, and an injunction

was issued restraining Way from conveying to Francis. Afterward complainant consented that the deed should be delivered, reserving the right to enforce a lien against the premises. The court decreed that Francis pay to complainant within sixty days the sum of $1,692.60, and in default thereof, that the premises be sold.

Mr. L. C. ROCKWELL, for appellants.

Mr. E. T. WELLS, *pro se.*

BRAZEE, J. Appellee exhibited his bill in the district court of Clear Creek county, against appellant and others, to enforce a vendor's lien. He charges that one George Way, being the owner of certain realty, employed and empowered him to make a sale thereof, and authorized him to retain all that he should receive over and above a certain sum for his services; that he accordingly made sale of the premises to the Franklin Silver Mining Company, for a sum exceeding the amount specified by Way by $750, payable in one year from the date of sale; that afterward, and before the money fell due, the Franklin Company assigned their contract to one McFarland, who obtained a renewal thereof from Way, and who executed to Way his promissory note for the sum of $3,000, payable on the 6th of September, 1872, and who also executed to appellee his note for $780, payable at the same time, the latter being the sum due to appellee for his services in selling the property. The bill also charges that McFarland failed to perform his contract, and that on the 6th of December, 1872, he assigned and transferred his interest therein to appellant. That appellant, McFarland and Myers, who acted as the agent of both, McFarland and Francis, fraudulently obtained another contract from Way, from which appellee's demand was omitted, no provision being made therein for the payment of his claim. It will be seen that the assignment from McFarland to appellant is an essential feature of the case made; for as provision was made in the bond given to Mc-

Farland for appellee's demand, by accepting an assignment of it, appellant would become bound by its terms. As to this, however, the proof is wholly insufficient. It appears that the McFarland bond was surrendered to Way on the 6th of December, 1872, who executed a new obligation to Francis, by which he bound himself to convey the premises to the latter.

It will be observed that Way was under no obligation to pay the sum promised by McFarland to appellee, nor could the premises be charged therewith until McFarland should perform his contract  The lien of vendors for purchase-money attaches to the interest of the vendee in the premises sold, and if the contract is not performed in any way, there is nothing to which the lien can attach. If a portion of the purchase-money is paid, the interest of the vendee thereby acquired may be sold to satisfy the remainder of the purchase-money, but if nothing whatever is paid, it is impossible to say that the vendee had any interest in the premises. In the case at bar nothing was paid by McFarland, and, therefore, he has no interest in the land which may be charged with appellee's demand.  As to appellant, if he assumed to fulfill the McFarland contract, or expressly promised to pay appellee's demand, he may be held liable therefor, but he cannot be charged except upon his own contract, express or implied. In the McFarland bond, time was made the essence of the contract, and after the time therein specified had expired, it would seem that Way might sell to any one who would purchase, and upon the old terms or new terms, without regard to the previous contract.  *Oliver* v. *Supervisors of Livingston County*, 62 Ill. 528.

In any event the purchaser would only be liable to perform the contract of his vendor, that is, to convey to McFarland upon payment of the money ; that is, the fund from which appellee would receive payment, and not that paid to Way by the new purchaser.  There is evidence to show that Francis, through his agent, Myers, promised to pay appellee's demand, as part of the price of the land, at the time the bond to him was executed.  If such promise

was made the right of an assignee of the purchase-money to maintain a lien being conceded, there can be little doubt as to its validity.  But no such promise is charged in the bill, and as we understand that a plaintiff must recover according to his allegation, if at all, the decree cannot be supported in that view. Story's Eq. Pl., § 257.  It will be proper, however, for the plaintiff to amend his bill upon such terms as the district court may prescribe, and for that court to consider the sufficiency of the evidence upon that point.

The decree of the district court is reversed, and the cause is remanded.

STONE, J., dissenting.   The bill charges that in July, 1870, one George Way was the owner of some right, estate or interest in a certain water power and mill site, together with the mill buildings, machinery, fixtures and appurtenances, one storehouse, two dwelling-houses,  and one office in Masonville Lower Mining District, Clear Creek county, Colorado.   That he was desirous to sell the same, and authorized the complainant to negotiate a sale thereof under an agreement that all the purchase-money in excess of $3,000 cash, or $3,000 payable in one year from time of sale, at ten per cent interest per annum, should be retained by the complainant as compensation for his services in effecting such sale.

That the complainant, on or about the 6th day of September, 1870, sold the said property to the Franklin Silver Mining Company for $3,000, payable in one year thereafter, with interest at the rate of three per cent per month until paid ; that said sale was ratified by Way, and complainant, in the name of Way, executed and delivered to the Franklin Silver Mining Company a bond conditioned to make title to said premises on payment of the purchase-money aforesaid.

That the amount due and payable to complainant for his compensation for effecting said sale was the sum of $780, out of the total sum of principal and interest to be paid by the Franklin Silver Mining Company.

That afterward, on or about the 26th day of February, 1871, the Franklin Silver Mining Company assigned the said bond for title to George McFarland.

That in August following, McFarland, in order to get further time of payment on the notes for the purchase-money, with the consent of complainant, gave his notes to one Erskine McClellan, then the attorney in fact for Way, payable to Way for $3,300, and his note to complainant for $780, due and payable on the 6th day of September, 1872, and McClellan, for Way, executed, in the name of Way, a bond conditioned to convey the said premises to McFarland on payment of the notes last mentioned.

Afterward, on the 6th day of December, 1872, said McFarland assigned said bond to the defendant.

The bill further charges, that, in order to defraud the complainant out of that portion of the purchase-money payable to him, McFarland and the defendant, Francis, caused the said bond to be delivered up to said McClellan, with an indorsement thereon that it was canceled, and the property re-delivered to Way; whereas, the bond never was canceled, nor the contract of sale rescinded, but that either McFarland or Francis, in order to induce McClellan to give further time of payment for the purchase money, and to execute a bond of title to Francis, paid McClellan for the use of Way over $1,000, part of the identical purchase-money agreed to be paid by McFarland to Way.

That, on the 6th day of December, 1872, for the purpose of cheating the complainant out of his share in the purchase-money, McClellan, in the name of Way, executed to Francis a bond for title to the said premises, conditioned upon due and full payment by Francis to Way of $3,597 and interest, to convey the premises to Francis, and that afterward, on the 2d day of September, 1873, a deed was executed by McClellan for Way to Francis.

The bill charges notice to Francis of complainant's interest in the purchase-money, and insolvency of McFarland.

The answer of Francis denies that McFarland ever

assigned the bond by Way to him, free, or that he ever had any right or title therein, that he is a purchaser of the property mentioned in the bill for a valuable consideration, without notice, actual or constructive, of any right, interest or claim of the complainant.

The question presented by this bill is, whether a third person having no title, but an interest in the purchase-money, and to whom a part of the purchase-money is, by the terms of sale, made payable, has a lien which in equity he may assert against the land sold for its payment, where the vendor gives a bond for title when the purchase-money is paid, and the purchase-money is not paid, and the vendor conveys to another.

It is a well-established principle of courts of equity, that the vendor of land has a lien on the land for the amount of the purchase-money, not only against the vendee himself, but against all subsequent purchasers having notice that the purchase-money was unpaid. The vendee becomes the trustee for the vendor to the extent of the lien, and all persons claiming under him, with notice that the purchase-money is unpaid, are in the same position as the vendee, and this lien exists independent of any agreement. It is an equitable lien in the nature of a trust, and the trust in favor of the vendor is implied, and, as a *general* rule, third persons have no interest in it. The rule is, that the lien exists as well for a part as for the whole of the purchase-money, and the burden of proof is on the purchaser to establish the fact that the lien has been waived by the consent or agreement of the parties, and if, under all the circumstances, it remains in doubt, then the lien attaches. 2 Story's Eq. Jur., § 1224. It is clear that George Way was the owner of the property described in the complainant's bill, on the 4th day of July, 1870, and that the legal title remained in him up to the time that Erskine McClellan, as his attorney in fact, executed the deed to the defendant, on or about the 6th day of September, 1873. On the sale of the property by the complainant, under the power of attorney from Way, to the Franklin Silver Mining Com-

pany, he was indebted to the complainant the sum of $780, as his compensation for making the sale, that being the residue of the purchase-money in excess of the price demanded by Way; and it is plain that that sum was to be paid to the complainant from the purchase-money arising from the sale of the premises. It is not denied by the answer, nor by any of the witnesses examined before the master. It is fully recognized in all the correspondence between the several parties. Blackman understood this when negotiating for the Franklin Silver Mining Company. It was included in the notes given by the Franklin Silver Mining Company to Way. It forms part of the consideration to be paid by it as a condition precedent to procuring a title from Way. It was well understood, when the time of payment was extended to McFarland, in August, 1871, and the new bond executed by Erskine McClellan for George Way to McFarland recites that $780 of the purchase-money was payable to the complainant. It is clear that Myers, who acted for Francis in making the purchase, had actual notice of all of complainant's rights, and notice to the agent is constructive notice to the principal.

The defendant having notice of this equitable claim of the complainant, is he, under all the circumstances of the case, chargeable with its payment? Or, in other words, is it a charge upon the property conveyed to him by Way?

It is conceded that if a vendee, who purchases land on a credit, and takes a bond for title when he pays the purchase-money, fails to pay according to the terms stipulated, the vendor may consider the contract at an end, and may lawfully sell to a third person, and that such purchase would take the land free from all liens and charges of which he had no notice. But the case is different when the vendee has notice of a charge or lien upon the land, and recognizes it as a valid and subsisting lien, and promises to pay it. Had McFarland acquired the title to this land from Way, knowing, as he did, that the complainant held a note for a part of the purchase-money, without paying the note, the

complainant could enforce its payment out of the land by virtue of the equitable lien in him as the holder of note given for the purchase-money.

If Francis voluntarily takes the place of McFarland with the same notice that McFarland had of the equity of the complainant, and recognizes and expressly or impliedly promises to pay it, he is as much bound as McFarland would be had he acquired the legal title from Way. That Francis occupied this position, we think the evidence satisfactorily shows, and was properly admitted. The lien attaches by virtue of the consideration or purchase-money for the land remaining unpaid, as a security for its payment; it is independent of any contract, and, having once attached, continues until expressly waived, or a manifest intention is shown that the party entitled thereto intends to waive it. There has been no such intention manifested in this case, but, on the contrary, it is plain the complainant never intended to waive it. By the terms of the sale a part of the consideration, nearly equal to one-fourth of it, was made payable to the complainant, and to that extent he was substituted the vendor, by the act of the vendor, the vendor retaining the legal title; and we have been unable to find a single case where it has been held that a third person, to whom the consideration, by the terms of the sale, is made payable, has not a lien which he may assert against the land sold for its payment. A different rule has prevailed when the vendor, at the time of sale, parts with the legal title. In such cases it is held that the lien does not inure to the benefit of the indorser of the notes.

But when, upon a sale of land, only a bond to convey a title is made by the vendor to the vendee, and note given by the vendee for the consideration agreed upon, whatever title is passed is incumbered with a lien, which passes to the assignee of the notes, which cannot be defeated by a deed from the original vendor to a sub-purchaser of the original vendor. If the lien passes with the notes it cannot be avoided by the act of others. *Dishmore* v. *Jones*, 1 Cold. T. R. 554; *Honore* v. *Bakewell*, 1 B. Monr. (Ky.) 72; *Thomp-*

*son* v. *Pyland*, 3 Head (Tenn.), 537 ; *Inland* v. *Berryman*, 3 Bush (Ky.), 356 ; *Johnson* v. *Jackson*, 27 Miss. 498 ; *Hamilton and Wife* v. *Gilbert*, 2 Heisk. (Tenn.) 680.

A different rule would enable the vendor to perpetrate a fraud upon the party interested in the purchase-money, and manifestly defeat the actual intention of the parties at the time the sale was made. The rule as to a vendor's lien is manifestly founded on a supposed conformity with the intention of the parties upon which the law raises an implied contract ; it is not inflexible, but yields to what manifestly appears to be the intention of the parties in the particular case. It is made subservient to all the equities between the parties. *Gilman* v. *Brown*, 1 Mason, 190. The whole testimony in this case discloses a condition of things in relation to this property inconsistent with any other idea than that the complainant has a lien on the land for that portion of the purchase-money represented by the note he holds, a lien, as the evidence shows, recognized and assented to by all the parties who have ever claimed any interest in the property. There is evidence to show, and, perhaps, sufficient to authorize, a legal inference that Francis holds the legal title for the use of the original vendee, the Franklin Silver Mining Company, and in that event he would be merely a trustee for that company, and subject to all the equities complainant had against it. It is, however, unnecessary to discuss that question. My associates, in the opinion announced in the case, seem to concede that, if the defendant, Francis, promised to pay the demand of complainant as part of the price of the land at the time the bond to him was executed, the lien of complainant attaches to the land. The court say : " There can be little doubt of its validity, but no such promise is charged in the bill, and that a plaintiff must recover according to his bill, if at all." It is true relief cannot be granted for matter not charged in the bill, that the decree is pronounced *secundum allegata et probata*, and it is equally true that a general charge or statement of the fact is sufficient ; it is not necessary to charge minutely all the circumstances which

may conduce to prove the general charge, for these circumstances are matters of evidence which need not be charged in order to let them in as proofs. Story's Eq. Pl., §§ 28, 257. It appears to me that the allegations in the bill, taken as a whole, are sufficient to sustain the decree. It is positively and distinctly averred that the demand of the complainant is founded upon the trust created by the vendor's lien. That the defendant, Francis, was a purchaser with notice and took the property subject to the lien. These allegations are the substance of the issue involved, and by them the defendant is informed of the nature of the case against him. The circumstances attending the sale and transfer of title are matters of evidence tending to prove the main fact.

That such allegations are sufficient has been decided by this court. *Logan* v. *Clough*, February term, 1874.

In my opinion, the decree of the court below should be affirmed.

*Reversed.*