In the Matter of the Estate of LOUIS FRIEDLANDER, Deceased.

Surrogate's Court, New York County. December 22, 1941.

*Jacob A. Bernstein*, for the petitioner.

*Abraham L. Bienstock* [*Richard Reiss* of counsel], for Lena Wershaw, respondent.

*Kissam & Hayden* [*J. Francis Hayden* of counsel], for the estate of William Melosh, deceased, respondent.

*William F. Delaney* [*William F. Delaney* and *George J. Gillespie, Jr.*, of counsel], for Gillespie & O'Connor, respondents.

*Lester C. Gelinas*, special guardian.

FOLEY, S. This is a contested accounting proceeding. The principal question is whether the claimant, Lena Wershaw, is entitled to priority as a secured creditor or has merely the status of a general creditor of the estate. The assets of the estate are insufficient to pay all claims in full. Mrs. Wershaw has asserted a right to a preference over all other creditors on the theory that she acquired an equitable lien upon the shares of stock of Louis Friedlander, Inc., which constitute the principal asset of the estate.

(1) The surrogate holds that the claimant has neither an equitable lien nor a charge upon the shares of stock, and that her claim stands upon a parity with those of the other general creditors of the estate.

The claimant was the wife of decedent. Her claim, which is undisputed as a valid obligation of the estate, arises out of a separation agreement executed by her and decedent on May 16, 1934. The agreement provided for the payment by decedent to her of the sum of $30,000 in 120 monthly installments of $250 each. It was agreed that if he predeceased her, the unpaid balance would immediately become due and payable and that she " shall be entitled to file a claim against defendant's estate for the entire unpaid balance; no interest, however, on said unpaid balance shall accrue until one year after the defendant's death." She has accordingly filed a claim for approximately $15,000.

Her right to an equitable lien is predicated upon certain provisions of the separation agreement. In that agreement the decedent is referred to as the defendant, and the claimant is called the plaintiff, the titles being derived from a separation action that was then pending.

The sixteenth paragraph of that agreement reads as follows: " As collateral security for the payment of the sum provided for in paragraph ' First ' hereof, the defendant does hereby assign to the plaintiff the sum of $250, during each and every month of the duration of this agreement, out of salary, dividends, and any and all other rights of payment which the defendant now is or hereafter may be entitled to receive from Louis Friedlander, Inc., and upon the execution hereof shall procure said Louis Friedlander, Inc., to acknowledge in writing notice of such assignment and an agreement to pay to plaintiff, in accordance with the tenor hereof, the said sum as and when the same shall become due, as provided in paragraph ' First,' out of the said sums due or to become due to the defendant from said Louis Friedlander, Inc."

The agreement further provides:

" *Seventeenth.* The defendant represents that he is the sole and exclusive owner of all of the outstanding capital stock of Louis Friedlander, Inc., a domestic corporation, doing business at No. 71 Nassau Street, Borough of Manhattan, City of New York, of which he is the president; and the defendant hereby covenants that he will not sell, transfer, assign, pledge, mortgage or in any manner dispose of or encumber any of the said shares of stock, nor will he consent or permit the business of the said corporation to be sold, nor vote his said stock for such purpose, unless, in connection with or prior to any such transaction, there shall be deposited with the Bankers Trust Company of New York, or other bank designated by the plaintiff, the full consideration received in connection with any such transaction or so much thereof as shall equal the balance then owing hereunder to be paid out in accordance with the terms of this agreement. Simultaneously with the execution of this agreement, any and all stock certificates of the said corporation shall be endorsed as follows: ' Subject to the conditions of the agreement between Lena Friedlander and Louis Friedlander, dated the 16th day of May, 1934.' "

Claimant contends that each of the above-quoted paragraphs of the agreement is sufficient, standing alone, to create an equitable lien in her favor upon the stock or its proceeds. Under her theory, paragraph seventeen indicates an intention to make the shares of stock security for the payments to her and thereby creates an equitable lien on such shares. Further she declares that the effect of the preceding paragraph was to assign to her all rights of payment which her husband might become entitled to receive from the corporation; that after his death his estate became entitled to receive all of the assets of the corporation; and that all of such assets, therefore, stand assigned as security for her claim. Both of these arguments are without foundation.

An equitable lien is founded upon a contract, express or implied, relating to specific property and indicating clearly an intention that such property is to be held, given or transferred as security for an obligation. (*James* v. *Alderton Dock Yards*, 256 N. Y. 298, 303; *Penn. Oil P. R. Co.* v. *Willrock Producing Co.*, 267 id. 427, 434.) The doctrine is an application of the maxim that equity regards as done that which ought to be done. (Pomeroy's Equity Jurisprudence [5th ed.], § 1235.) It is necessary that the intention " to create such a charge clearly appear from the language and the attendant circumstances. Strict proof of such intention is required." (*Penn. Oil P. R. Co.* v. *Willrock Producing Co., supra.*) A contract which will create an equitable lien is not restricted

to any particular form or precise language. When it becomes clear to the court that the purpose and intent of the parties were to give a lien or impose a charge upon specific property, equity will give to the transaction the result that it was intended to produce. (*National Bank of Deposit* v. *Rogers*, 166 N. Y. 380, 390; *Sexton* v. *Kessler*, 225 U. S. 90.) An equitable lien usually arises from the express promise of a party to hold certain property as security for an obligation or to give a mortgage, make a pledge, or otherwise transfer it as security. Equity will specifically enforce the promise where no paramount rights intervene. Thus there may be an equitable lien where there was an attempt to make a legal mortgage which was invalid for want of some solemnity (*Payne* v. *Wilson*, 74 N. Y. 348), or where there was a covenant to give a mortgage or a lien (*Hale* v. *Omaha National Bank*, 49 N. Y. 626; *Husted* v. *Ingraham*, 75 id. 251; *Coats* v. *Donnell*, 94 id. 168.) Such a lien may be declared and enforced where there was an express contract pledging property (*Chase* v. *Peck*, 21 N. Y. 581) or an agreement to hold it as security for a debt to another. (*McCoy* v. *American Express Co.*, 253 N. Y. 477, 482; *National Bank of Deposit* v. *Rogers*, *supra*; *Sexton* v. *Kessler*, *supra*.)

In all such cases equity merely gives effect to the express agreement of the parties and treats as done that which the parties intended to be done. It does not attempt to impute or supply an intent and purpose that the parties themselves did not possess.

A careful reading of the contract involved in the pending proceeding clearly indicates that it was never the intention of either party that the shares of Louis Friedlander, Inc., were to be impressed with a lien in favor of claimant. The language of the seventeenth paragraph of the agreement directly negatives any such purpose. No pledge or assignment of the shares of stock was ever to be made and no lien of any kind on those shares was ever contemplated. We are not here faced with the situation where the parties have imperfectly expressed their purpose or have misconceived the legal effect of their words. Both parties had the advice and assistance of competent and experienced counsel, and the provisions of the agreement appear to have been very carefully formulated. The right of decedent to " sell, transfer, assign, pledge, mortgage or in any manner dispose of or encumber " any of the shares of stock was not completely denied to him. It was qualified, rather, by the provision for the deposit of the consideration received therefor. Such deposit, moreover, could be made " in connection with or prior to any such transaction," indicating that it made no difference whether he deposited the fruit of the transaction or an equal amount of his own money in advance of such transaction.

Neither the express language nor the necessary implication to be drawn from the words used in the agreement supports the contention that a lien or charge upon the shares of stock was intended. On the contrary, there is a positive, direct manifestation of a purpose to hold the stock free and clear of any lien or assignment or charge of any kind.

The absence of specific words of assignment, pledge or lien from paragraph seventeen is particularly significant when the provisions of the preceding paragraph are examined. The sixteenth paragraph related to the monthly payments which were to be made to the wife. It was there expressly stated that the husband assigned to the claimant the sum of $250 each month from the moneys due him from the corporation. This was stated to be " as collateral security " for the payment of the sums due. A written acknowledgment of such assignment was to be procured from the corporation. It is thus evident that the parties well knew how to express their purpose when they had agreed on the limits of their respective rights and obligations.

The conclusion that no lien was intended is further confirmed by the language used in the first paragraph of the contract wherein it was agreed that the wife " shall be entitled to file a claim against " the estate of the husband " for the entire unpaid balance." No interest was to accrue on this balance until one year after his death. Surely, if she were to have a lien upon the only valuable asset of the decedent, the experienced counsel for the parties would not have chosen this language which so clearly placed her in the category of a general unsecured creditor of his estate.

It is evident that in the separation agreement the claimant sought to protect herself against the disappearance of the husband's visible assets and against his possible reluctance to make the payments rather than against his inability to continue them. She feared a secretion of his assets rather than his insolvency. If she ever demanded a wider protection, it was not accorded to her in the written agreement of the parties.

The contention that an equitable lien was imposed upon the shares of stock by the sixteenth paragraph of the agreement is without any merit. That clause related solely to the monthly payments, and it expressly provided for an assignment of $250 during each month from salary, dividends or other moneys due the decedent from the corporation. If the succeeding paragraph of the agreement is ineffective to impose an equitable lien upon the shares of stock, it would require an utterly ingenious construction of the instrument to find such an intent in paragraph sixteen.

There are instances where equity will enforce a lien upon property without an express agreement of the parties. It is a remedy based upon general equitable principles where there might otherwise be no relief to the injured party. It is sometimes said to be based upon an implied contract, but the use of this term is not quite accurate. (*James* v. *Alderton Dock Yards, supra;* Pomeroy's Equity Jurisprudence [5th ed.], § 1238 *et seq.*) Such relief is usually confined to situations where the one claiming the lien has made advancements of money for the purchase, preservation or enhancement of the property. (Cf. *Perry* v. *Board of Missions, etc., of Albany,* 102 N. Y. 99; *Leary* v. *Corvin,* 181 id. 222; *Storm* v. *McGrover,* 189 id. 568; *Merrihew* v. *Parrott,* 168 App. Div. 704; Pomeroy's Equity Jurisprudence [5th ed.], § 1239 *et seq.*)

In the present proceeding there is no basis for awarding claimant any extraordinary equitable relief. She contributed nothing to the corporation or to the value of the shares of stock. The payments to her were primarily in discharge of decedent's matrimonial obligations. If any equities exist, they accrue rather in favor of the Melosh estate and against the claimant Wershaw. Moneys loaned to decedent by the late Mr. Melosh were used to meet most of the decedent's obligations to Mrs. Wershaw. It does not, of course, entitle the other to a preference, but it does refute the contention that claimant is entitled to priority upon general principles of right and justice.

There is a further reason for denying the claim of a preference. Under section 230 of the Lien Law, a lien upon shares of stock unaccompanied by change of possession or the filing of the instrument creating it, is void as against the creditors of the owner of the stock. This statute includes within it " declarations of trust, and so-called equitable liens." (*Sammet* v. *Mayer,* 108 F. [2d] 337, 340.)

The surrogate, therefore, holds that the claimant Lena Wershaw has no lien or charge upon the shares of stock of Louis Friedlander, Inc.

(Other directions included in the original decision of the surrogate omitted because of their subordinate importance.)

Submit decree on notice settling the account accordingly.