## GARDNER v. GARDNER.

No. 7342.   Decided October 16, 1950.   (222 P. 2d 1055)

See 28 C. J. S., Domicile, Sec. 18. Intent as essential element in change of domile in divorce, 157 A. L. R. 1366. See, also, 17 Am. Jur. 277.

*Bullen & Bell,* Logan, for appellant.

*L. E. Nelson,* Logan, for respondent.

McDONOUGH, Justice.

Defendant appeals from a judgment and decree of divorce entered in favor of plaintiff. The decree included a monetary award in lieu of alimony and an award of counsel fees and costs. Appellant's principal contentions are: (a) Plaintiff was not a bona fide resident of Cache County for three months immediately prior to commencement of the action, and hence the court had no authority to enter a decree of divorce. (b) Plaintiff herself was blameworthy to such an extent that no divorce should have been decreed. (c) There was no basis for an award of counsel fees.

There is substantial competent evidence in the record from which the court could have found the following to be the material and relevant facts:

The parties had been acquainted for a number of years. Each had been married previously and had reared a family to maturity. In company with some relatives, the parties went to California in April 1948, two months before the marriage. At that time there was some discussion about getting married then and making their home in California. While defendant testified that he did not want to get married then, nor until they could live away from plaintiff's

relatives, some of whom he blamed for some of the difficulties and disagreements between plaintiff and himself, the fact is that the parties were married at Pocatello, Idaho, on June 15, 1948, at a time when plaintiff's mother was ill and when no arrangements had been made for the plaintiff to live at any place other than her mother's home. Plaintiff took care of her partially invalid mother for a number of months prior to the marriage, and upon their marriage plaintiff and defendant lived at the mother's home in Logan, although defendant owned a farm at Santaquin which was rented to tenants. He sold said property about three months after the marriage.

As early as the first month following the marriage, the parties quarreled. On one occasion defendant left the home and stayed at a hotel. Within two months additional quarrels occurred and defendant sought the services of an attorney with respect to a divorce. There is evidence that defendant provoked a number of these controversies. It is conceded that defendant treated plaintiff's mother with kindness and consideration, and that plaintiff's mother tried to reconcile the parties to each other on several occasions, after a quarrel had become so heated that the marriage was threatened with disruption. The record indicates that each of the parties yielded to the wishes of the other rather reluctantly—if yielding at all. There is some indication that each regarded the making of necessary adjustments for marital harmony as a tremendous personal sacrifice.

When defendant sold his farm, the parties discussed locating in California. Defendant testified that it was agreed that they should leave Utah permanently and locate in California as soon as a home could be acquired, while plaintiff testified that her intention in going to California with defendant was to see if they could get along there, and if so, to stay in California. She denied that she intended to give up her home in Utah; and she testified

that she mentioned that they would have "to get along" with each other, and if things did not go well she would return. It is undisputed that both took their savings and deposited the same in a joint bank account in California. The articles which they needed on a trip were taken with them. They did not have a definite idea as to where they would settle. Consequently, they contacted real estate brokers by correspondence and obtained information. They intended to return to get their personal properties which were left in Logan and Salt Lake City after they would be permanently located.

The parties took plaintiff's mother with them. They visited with a brother of plaintiff north of San Francisco. While there they found a house at Windsor, California, on which they made a down payment. They planned to remodel the place as a home. While waiting for the tenants to vacate to get started on remodeling, they had a quarrel. Defendant said it was the "finish" and that he was returning to Utah. According to his testimony, he said he would take them back with him. He took them back to plaintiff's mother's home in Logan where they had resided at the time they made the trip to California. Defendant then went deer hunting, and during his absence plaintiff filed suit for divorce.

The parties were married June 15, 1948, temporarily separated within a month, after several quarrels went to California in September, and returned about the middle of October 1948. They were away from Logan only three weeks.

The question of whether the plaintiff was an "actual and bona fide resident" of Cache County for the period prescribed by statute, U. C. A. 1943, 40—3—1, which is raised by the first assignment of error is essentially one of fact. Is the evidence such that the trial court was required to find that by going to and remaining in California for two

or three weeks, together with the attendant circumstances, the parties thereby manifested a present intention to live permanently or indefinitely in that state? See 17 Am. Jur., Domicile, sec. 24, p. 605, and *Price* v. *Price,* 156 Pa. 617, 27 A. 291.

Certain settled principles should be kept in mind in seeking the answer to the stated question. If the parties by going to California expected a change of actual domicile, then per force they thereby ceased to be actual and bona fide residents of Utah. Short absense from a ▆▆▆ former abode may be sufficient to evidence abandonment thereof, although the party might soon change his intention. A floating intention to return to a former abode is not sufficient to prevent the new abode from becoming one's domicile. *Gilbert* v. *David,* 235 U. S. 561, 35 S. Ct. 164, 59 L. Ed. 360. However, it is also true that a contingent intention to change one's domicile accompanied by a temporary removal from an established domicile will not work a change of domicile, at least until the contingency occurs. The essential fact that raises a change of abode to a change of domicile is the absence of any intention to live elsewhere. *Williamson* v. *Ossenton,* 232 U. S. 619, 34 S.Ct. 442, 58 L. Ed. 758, and *Sneed* v. *Sneed,* 14 Ariz. 17, 123 P. 312, 40 L. R. A., N. S., 99. See also 17 Am. Jur. p. 607, 609-610.

It is appellant's contention that the three weeks absence from Utah ended plaintiff's bona fide residence here. He testified that the purpose of the trip to California was to establish a permanent home. He emphasizes the fact that it was his belief that the parties would be able to get along only in case they could get entirely away from the wife's relatives other than her mother. He insists that withdrawal of $1400 from the joint bank acount in California and the use thereof as a down payment on a home in that state, required a finding that the parties thereby manifested an intention to remain indefinitely in California.

It must be conceded that the purchase of a home in another state is evidence which has a strong bearing on the question of intention to abandon the existing domicile and to adopt one at the site of the home so acquired. However, it is not necessarily conclusive. Only $1400 of the $5400 deposited by the parties was applied as the down payment on the home. The parties had not yet established residence in that home and did not intend to do so until after the house was remodeled. The major part of their personal effects were never moved out of the state of Utah. Furthermore, as hereinabove pointed out, there is positive evidence of the respondent that it was her expressed intention not to abandon the home in Logan, Utah, as a domicile until she could determine whether the attempted adjustment away from her relatives and friends would be successful.

In view of these facts, and taking into consideration the advantaged position of the trial court for adjudging the frankness, candor and credibility of the witnesses, we conclude that there is evidence in the record to support the findings below that the parties did not abandon their domicile in Utah. As a consequence, the assignment of error which challenges the jurisdiction of the trial court is overruled.

With respect to the contention that plaintiff's conduct was such that she was equally blameworthy as defendant, and that the court should have denied her a decree, we are not disposed to disturb the findings of the trial court. The judge observed the demeanor of the parties and of their witnesses, and on disputed questions of fact he decided in favor of plaintiff. No doubt each of the parties expected that the other would make greater adjustments to assure marital harmony. Such an attitude, however, did not justify the defendant in doing the things which destroyed his wife's affections for him, nor in in-

itiating quarrels to keep her under a nervous tension. There is evidence sufficient to warrant a finding of mental cruelty.

The court was modest in awarding plaintiff reimbursement for the sums which she contributed to the common fund. The court awarded only $150 counsel fees after a contested trial. While complaint is made of this award on the ground that there was no allegation in any of the pleadings to invoke such relief, the facts alleged by plaintiff in her complaint indicated that she was the injured party, and she prayed for general relief. The facts of the case brought out at the trial as well as the allegations of the complaint, warranted the court in awarding $150 as counsel fees in addition to costs. Evidence as to what would constitute a reasonable attorney's fee was not a prerequisite to an award thereof when the case was contested and the court awarded only a modest fee. See *Anderson* v. *Anderson*, 54 Utah 309, 181 P. 168.

The judgment of the district court is therefore affirmed. Costs to respondent.

PRATT, C. J., and WADE, WOLFE, and LATIMER, JJ., concur.