## OLSEN et ux. v. KIDMAN.

No. 7642.   Decided September 18, 1951.   (235 P. 2d 510.)

See 12 C. J. S., Brokers, sec. 88. Slander of title by filing instrument. 33 Am. Jur., Libel and Slander, sec. 346; 9 A. L. R. 931.

*Rawlings, Wallace, Black, Roberts & Black* and *Dwight L. King,* Salt Lake City, for appellant.

*Walter G. Mann,* Brigham City, for respondents.

WOLFE, Chief Justice.

The defendant Leslie J. Kidman, doing business as Perry Realty, claims that he has a valid equitable lien upon plaintiff's real property for the amount of his commission, earned by procuring a purchaser for the property. The plaintiff contends that the lien is invalid and the filing thereof constitutes slander of title, for which this action is brought. On February 7, 1950, the plaintiff signed the listing agreement which provided:

"Perry Realty:

"In consideration of your agreement to list the property described below, I hereby agree:

"1. To give you the exclusive right to sell or exchange at the price and terms here stated *for a period of 2 months from date,* and to pay a commission of 5% of the total sale price.

\* \* \* \* \*

"3. To pay Perry Realty the commission on any sale or exchange if it is sold or exchanged *within three months after expiration to any person to whom any memmber of Perry Realty has previously offered it;* also the commission on any forfeitures." (Italics added.)

The property was not sold within two months. On June 10, 1950, the plaintiff listed the property with Carrol Williams who sold the property on the 23rd of June to L. V. Mills, the purchaser. Mills had been contacted April 29th by the defendant. This was 22 days after the two months exclusive listing period in the agreement. Mills was interested in the Olsen property on the condition that he could sell his own place for $11,500. Defendant was unable to find a purchaser for the Mill's place, so this transaction did not materialize. Defendant claims that Mills was his customer under clause 3 of the agreement, supra. When plaintiff failed to pay the commission, defendant filed his "Notice of Lien" for $900 in the County Recorder's office. Mills had taken possession of the property before notice of the claimed lien was filed. Plaintiff paid a commission to Carroll Williams.

The validity of defendant's claim that the plaintiff owed him $900 depends upon an interpretation of clause 3 of the listing agreement, set forth above. Assuming that Mills was defendant's customer, and that plaintiff did in fact owe the defendant $900 commission, the question thus presented is whether a real estate broker is entitled to an equitable lien for his commission, upon property sold to a customer he has procured.

In its broadest sense and common acceptation, the word "lien" is understood and used to denote a legal claim or charge collectible out of property either real or personal, as security, for the payment of some debt or obligation. It includes every case in which personal or real property is charged with the payment of a debt. *Gray* v. *Horne,* 48 Cal. App. 2d 372, 119 P. 2d 779. Liens are primarily regarded to be created by statute. Our Utah Code Annotated, 1943, provides for: mechanics lien, 52-1-3, (construction, alteration or repair of any building or improvement upon land) ; agistor's lien, 52-2-1, (forage supplied to livestock) ; hotelkeeper's lien, 52-2-2, (lodging and services supplied to the traveller) ; lessor's lien, 52-3-1, (on furniture and effects of tenant for rent due upon the premises) ; common carrier's lien, 52-4-1, (for transporting goods) ; attorney's lien, 6-0-40, (for services rendered) and others. No statutory provision is made for a real estate broker's lien. These liens are codifications of the common law liens. Generally, they are based on services rendered or materials furnished by the lien claimant upon the entity on which a lien is demanded. The theory of equitable liens is based on a contract, expressed or implied which deals with or in some manner relates to specific property. To create an equitable lien by contract, it must appear that the parties intended to create a charge upon the property. The property must be designated and an intention must be shown to create a lien as distinguished from an agreement to apply the proceeds of the sale to the payment of a debt. Jones on Liens, 3d Ed., Sections 28-33, *In re Friedlander's*

*Estate,* 178 Misc. 65, 32 N. Y. S. 2d 991. The instant listing agreement of the parties contains no express provisions for a lien upon the property to secure payment of the commission. The issue, therefore, is whether in this jurisdiction a lien arises in favor of the broker by implication from custom or usage in the real estate business.

The authorities dealing with the right of a real estate broker to impress a lien upon property sold by him to secure his commission are collected in *Moss* v. *Thomas,* 218 Ala. 141, 117 So. 648, 58 A. L. R. 1497 and 125 A. L. R. 921. In the case of *Moss* v. *Sperry,* 140 Fla. 301, 191 So. 531, 125 A. L. R. 909, the Supreme Court of Florida reviewed the precedent cases on the subject and held that a broker has no lien upon the property even where the broker alleged that the non-resident seller fraudulently sold the property to the broker's customer outside the contract in order to avoid paying the commission. The court pointed out that those cases in which a lien was granted to the broker, did so on the premise that the purchaser had promised to pay the broker's commission and therefore the broker was entitled to the protection of a vendor's lien which equity implies to secure the payment of the purchase price after conveyance has been made, *Zirkle* v. *Hendon,* 180 Ala. 209, 60 So. 834; *Francis* v. *Wells,* 2 Colo. 660; *Davis* v. *Huff,* Tex. Civ. App., 288 S. W. 267. The court stated that

"a bill of equity filed to enforce the payment of a broker's commission on a sale of real property, based on the theory that such unpaid commission per se is, or should be declared to be, a lien on the property sold does not, in and of itself, present any matter which would justify the exercise of equity jurisdiction."

We adopt the Florida rule. One of the reasons for our adopting such rule is that the real estate broker, in an action for breach of contract, has an adequate remedy at law. The broker in this case drew up the listing agreement. The choice of terms was his. By filing the lien, he attempted

to shift the burden upon the plaintiff of proving what the meaning was of the additional three months clause. It became incumbent upon the plaintiff to bring his action to remove the lien so that title could be conveyed free from any encumbrances, and thereby obtain the balance of the purchase price which had been withheld by the purchaser pending reception of clear title. If a seller should deliver the deed and receive full payment, the burden of removing the lien would then become that of the purchaser. Neither of these procedures is as equitable as requiring the broker to sue the seller for the commission. The defendant broker had no lien in this case. He filed a purported lien without legal basis for doing so.

The defendant and appellant, Leslie Kidman, contends that the Utah cases and the law generally regarding slander of title require that before liability can be found the recorder of the slanderous document must have known that he asserted a false claim without any foundation or right. In *Dowse* v. *Doris Trust Co.*, 116 Utah 108, 208 P. 2d 956, and in *Sproul* v. *Parks,* 116 Utah 308, 210 P. 2d 436, the facts recited indicate that the wrongful actions were actuated by malice in fact. In the *Dowse* case we said that the malicious filing for record of an instrument known to be inoperative is regarded as slander of title.

This does not mean that where the instrument is filed without a privilege or right to do so that actual malice must be proved in order to establish liability. The rule has been clearly stated in *Gudger* v. *Manton,* 21 Cal. 2d 537, 134 P. 2d 217, and in *Phillips* v. *Glazer,* 94 Cal. App. 2d 673, 211 P. 2d 37, 40. In the latter case, the court said:

"Slander of title is effected by one who without privilege publishes untrue and disparaging statements with respect to the property of another under such circumstances as would lead a reasonable person to foresee that a prospective purchaser or lessee thereof might abandon his intentions. Rest., Torts, sec. 624. It is an invasion of the interest in the vendibility of property. In order to commit the tort

actual malice or ill will is unnecessary. *Gudger* v. *Manton* [supra] Rest., Torts, secs. 624, 625, 628. Damages usually consist of loss of a prospective purchaser. Rest. Torts, sec. 633. To be disparaging a statement need not be a complete denial of title in others, but may be any unfounded claim of an interest in the property which throws doubt upon its ownership. *Gudger* v. *Manton*, supra."

To this may be added the comment on clause B of Restatement on Torts, sec. 625:

"It is not necessary that the publisher of a disparaging statement know or believe it to be false nor is it necessary that as a reasonable man he should know or believe that it is untrue. Furthermore it is immaterial that he has reasonable grounds for his belief in its truth. As in an action for defamation, if the other essentials to liability are present, the publisher of disparaging matter takes the risk that it is untrue."

The defendant real estate broker had no lien. The plaintiff's title was slandered when the purported lien was recorded without privilege to do so. The trial court awarded damages for $150 attorney fees, *Dowse* v. *Doris Trust Co.*, 116 Utah 108, 208 P. 2d 956, plus 6% interest on the sum of $1,500 which had been withheld by the purchaser until clear title could be conveyed, and 8% interest on the judgment until paid. The evidence also supports the award of $10 as punitive and exemplary damages.

Defendant counterclaimed for the amount of his allegedly earned commission and takes exception to the trial court's dismissal thereof. The listing agreement as set forth above, gave defendant the exclusive right to sell the property from February 7, to April 7, 1950. The plaintiff vendor also promised to pay the defendant's commission if the property was sold

"*within three months after expiration to any person to whom any member of Perry Realty has previously offered it;  *  *  *"

Defendant contends that the contract entitled him to a commission if the property was sold to any party to whom

he had previously offered it, either during the two months exclusive listing period or the subsequent three months non-exclusive period. L. V. Mills, the purchaser, was in fact contacted by Perry Realty during the three months period and prior to the sale of the Olsen property.

The listing agreement was prepared by the defendant, and if it was ambiguous, it should be construed against him. Thus in clause 3, the terms "previously offered", must be considered as referring to the stated time in the same clause, to wit—"after expiration" of the two months exclusive period. Offering the property *prior to the expiration* of the two months period in effect means offering it *during* the said two months. And under such interpretation, any prospective buyer to whom the property is offered during the two months exclusive listing period, becomes insofar as earning a commission is concerned, the exclusive customer of the broker. The exclusive listing period is two months, not five. The trial court did not err in finding that Mills was not the defendant's exclusive customer and that the defendant was not entitled to any commission. The judgment dismissing the counter-claim is affirmed.

Plaintiff cross appeals, contending that the trial court erred in assessing general damages for attorney's fees at $150. The court found that it was necessary for plaintiff to employ counsel for the purpose of removing the lien and that plaintiff agreed to pay his attorney $250 for the said services. Plaintiff's witness, an attorney from Brigham City, testified that $250 was a reasonable fee for the services performed. There was no cross-examination. While it is proper that evidence should be admitted in the form of testimony by attorneys as to what is reasonable compensation for legal services, such evidence is not binding upon the trial court. The evidence may assist the court and though it should not be discarded lightly, it is advisory only. *In re Smith's Estate,* 108 Utah 537, 162 P. 2d 105; *Brown* v. *Brown,* 119 Utah 429, 228 P. 2d 816; *Gardner* v. *Gardner,* 118 Utah 496, 222 P. 2d 1055.

The judgment is affirmed. The case is remanded to the trial court to assess as damages the reasonable amount of attorney's fees in defending the judgment upon appeal. Costs awarded to respondent.

WADE and McDONOUGH, JJ., concur.

CROCKETT, Justice (concurring in the result).

I concur in the result affirming the judgment of the trial court. The principal basis for that judgment was that defendant had no commission coming from the plaintiff, and so, in any event, would not have been entitled to a lien upon the property.

The parties were in dispute as to whether defendant had a listing on the property at the time it was sold. The agreement was made out by the defendant and if it was ambiguous it should be construed against him. As will be seen from an examination of it, it is hardly necessary to resort to that rule of construction to agree with the determination made by the trial court that appellant's listing had expired.

In the listing agreement, the plaintiff granted the defendant:

"1. The exclusive right to sell * * * for a period of two months from date, * * * and 3. To pay * * * the commission * * * if it is sold within three months after expiration to any person to whom Perry Realty has previously offered it * * *"

The two months exclusive listing period was from February 7th to April 7, 1950. The defendant first mentioned the property to the purchaser Mills on April 29, 1950. The property was thereafter sold to Mills by another real estate agent, Williams, to whom plaintiff paid the commission. The defendant insisted that the phrase "previously offered" included his offer of the property to Mills on April 29th. The plaintiff's evidence was that the parties discussed the provision of paragraph 3 set out above and that the defendant explained to the plaintiff that it was for the purpose of protecting the defendant if he was working on

a deal during the two months period of exclusive listing so that he would have three months more to complete the transaction if necessary; and also, so that if he had a customer during that period, that the sale could not thereafter be made to that same customer by plaintiff or any one else, and thus cheat the defendant out of the commission. The trial court properly interpreted the said clause 3 in accordance with the plaintiff's contention, that is, that the words

"if it is sold within three months after expiration to any person to whom Perry Realty has previously offered it * * *"

referred to an offering during the two months exclusive listing period.

The trial court accordingly found that the defendant was not entitled to a commission. It clearly appearing that the trial court was correct in doing so, it is perhaps immaterial whether defendant would have had a lien upon the property if he had earned a commission. I see no reason, however, why it would be amiss for the court to indicate the additional reason why the purported lien was invalid. I am in accord with the holding in the main opinion that real estate brokers are not entitled to a lien under the statutes of this state, and I approve the Florida rule referred to.

There are thus two solid reasons why the defendant had no right to file a lien against plaintiff's property. These are (1) That the defendant was not entitled to a commission in any event, and (2) that even if he had been, he would have had no right to a lien to secure it. The intent necessary to support an action for slander of title and the inferences of such intent that may be, drawn from wrongful conduct, is a subject which need not be discussed nor determined in this case because the evidence amply justifies the finding made by the trial court that the defendant willfully and maliciously slandered the plaintiff's title.

HENRIOD, J., did not participate.